**Charles Troy COLEMAN, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. PC–84–391.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1984.

Edward L. Munson, Tahlequah, for appellant.

Hugh Manning, Asst. Atty. Gen., Oklahoma City, William A. Edmondson, Dist. Atty., Muskogee, for appellee.

### ORDER AFFIRMING DENIAL OF POST–CONVICTION RELIEF

This is an appeal from the District Court of Muskogee County, Case No. CRF–79–76, wherein, after a hearing was held, the Honorable Hardy Summers entered extensive findings of fact and conclusions of law regarding each allegation of error raised by the petitioner in both his original and his amended applications for post-conviction relief, and denied same.[1]

As one of his allegations of error, the petitioner complains of the trial court's failure to provide him with a court appointed investigator to assist in his defense. However, as the district court found, the doctrine of res judicata bars consideration in post-conviction proceedings of issues which have been or which could have been raised on direct appeal. See for instance, *Harrel v. State*, 493 P.2d 461 (Okl.Cr.1972),

and cases cited therein. Moreover, even if this issue was properly before this Court it would be meritless. The argument sought to be raised has been previously addressed and rejected by this Court. See, *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980), reversed on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); and, *Bills v. State*, 585 P.2d 1366 (Okl.Cr.1978). These cases are dispositive of this issue.[2]

In another assignment of error, the petitioner asserts that the procedure in the district court denied him an opportunity for a fair and impartial hearing. He claims that it was error for the district court not to grant his writ of habeas corpus ad testificandum and his motion to serve as co-counsel in the hearing. However, the petitioner has failed to set forth any authority to support this assertion. Moreover, the applicable statute, 22 O.S.1981, § 1084, states in pertinent part that: "... The Court may receive proof by affidavits, depositions, oral testimony, or other evidence and *may* order the applicant brought before it for the hearing." (Emphasis added). The statutory language is clearly permissive and not mandatory.

At the conclusion of his order, Judge Summers, in addressing this alleged error, stated:

... [T]he issue of whether the defendant should be present during his hearing was under continuous advisement and if the Court found, at any time, that his presence was necessary the proceedings would have been delayed until his presence could be secured. In each instance where counsel sought the defendant's testimony, that testimony was found to be either stipulated to by the State, not relevant to the issue or not admissable or competent testimony. On no occasion did the Court find that the presence of the defendant to be either necessary or

1. See Appendix.

2. We take judicial notice that, despite being provided the benefit of court appointed investigator, the petitioner received a sentence of death in a subsequent murder trial held in Tulsa County. See, *Coleman v. State*, 670 P.2d 596 (Okl.Cr.1983), reversed because a juror was improperly excused in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

of benefit to the Court in determining the legal issues presented.

The petitioner has failed to demonstrate that the district judge abused his discretion in this matter.

■ Petitioner also argues that the district court erred in conducting the hearing on his application while he had a petition for writ of mandamus pending in this Court, in which he prayed for this Court to order Judge Summers to disqualify and recuse in the matter. We do not agree.

This Court never issued any order staying proceedings in the district court; rather, we declined to assume original jurisdiction because the petitioner "... failed to allege sufficient facts [for us] to grant the relief [prayed for]," and his petition was not filed ten (10) days prior to the hearing date as required by Rule 3.17 of this Court. (Since the petition did not state the date that the hearing sought to be prohibited was docketed, a telephone call was necessarily made to the Court Clerk of Muskogee County, and this Court was informed that the matter was scheduled for that very day. An additional telephone call to the District Attorney's office confirmed that the proceeding was in progress). We are unable to say that Judge Summers erred in holding the hearing.

■ In several other assignments of error, the petitioner alleges that he was denied effective assistance of counsel at the guilt and sentencing stages of his trial and on appeal. He further maintains that Judge Summers did not apply the proper standards in making his determination that the petitioner had not been denied effective assistance of counsel.

Petitioner sets forth a plethora of actions and inactions which he now maintains were mistakes committed by his trial attorney, which his attorney on direct appeal should have raised, but did not. However, we do not deem it necessary to enumerate each of the allegations for purposes of this appeal.

In the landmark decision of *Strickland v. Washington*, 466 U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States set forth standards by which to judge a contention that a criminal judgment must be overturned because of actual ineffective assistance of counsel. Therein, that Court stated in pertinent part as follows:

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

\* \* \* \* \* \*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

\* \* \* \* \* \*

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, 456 U.S. 107, 133–134 [102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' (citation omitted).

\* \* \* \* \* \*

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison*, 449 U.S. 361, 364–365 [101 S.Ct. 665, 667–668, 66 L.Ed.2d 564] (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

\* \* \* \* \* \*

When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

\* \* \* \* \* \*

... [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.* Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result. (Emphasis ours).

In the instant case, the petitioner has fallen to the temptation to second guess his trial counsel and now utilizes the benefit of hindsight, and this Court's opinion rendered on his direct appeal, styled *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983), cert. den., —— U.S. ——, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984), to assert inadequacies on the part of his trial counsel.

The evidence of the petitioner's guilt is overwhelming, as is the evidence supporting the jury's finding of the existence of all five (5) statutory aggravating circumstances. See, *Coleman*, supra. Moreover, the petitioner has made no showing that the justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance. See, *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The fact that trial counsel elected not to offer any evidence of mitigation in the punishment stage of the proceedings is not per se ineffective assistance as petitioner now alleges. As the Supreme Court observed in footnote 19 of its opinion in *United States v. Cronic*, supra: ... [T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no *bona fide* defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.

Even with the use of his hindsight enhanced vision, the petitioner has simply failed to demonstrate that there is a reasonable probability that, absent the alleged errors of which he now complains, the verdict of the jury would have been altered or

that his punishment would have been lessened. Therefore, utilizing the standards set forth in *Strickland v. Washington,* supra, we find that the petitioner has not been denied the actual effective assistance of counsel.

IT IS THEREFORE THE ORDER OF THIS COURT that the order of the District Court denying post-conviction relief should be and the same hereby is **AFFIRMED.**

IT IS SO ORDERED.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 30th day of November, 1984.

> HEZ J. BUSSEY, P.J.
> ED PARKS, J.
> TOM BRETT, J.

### APPENDIX

The Findings of Fact and Conclusions of Law of District Judge Hardy Summers read in pertinent part as follows:

"On the 10th day of May, 1984, there came on for Hearing the defendant's Application for Post-Conviction Relief, the defendant appearing by his appointed counsel, Edward Munson, and the State appearing by W.A. Edmondson, District Attorney for Muskogee County, and, having reviewed the entirety of the Record in the above styled cause, including the Preliminary Hearing, the Motions Hearing of September 5, 1979, the trial transcript, the Motion for New Trial and the Opinion of the Court of Criminal Appeals in case number F–79–600 (*Coleman v. State* [668 P.2d 1126 (Okl.Cr.1983)]), having received offers of proof on behalf of the defendant and stipulations of testimony and fact from the State, and, having heard argument of counsel and citations of law from both the State and the defendant, this court makes the following Findings of Fact and Conclusions of Law as to the issues raised in the Applications, taking them in the order that they were filed:

"1.  Issue A in the Original Application; that there was an illegal search of defendant's vehicle and illegal seizure of items therefrom.  The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"2.  Issue B in the Original Application; that counsel for the defendant was ineffective in the first stage of the trial by failing to object to certain incriminating statements made at the time of defendant's arrest.  The Court first makes the following Findings of Fact:

"A.  That defendant's trial counsel is a graduate of the University of Tulsa College of Law and was admitted to practice in Oklahoma in 1960.

"B.  That defendant's trial counsel was actively engaged in the practice of law, including extensive trial practice, for the 19 years preceeding his representation of defendant.

"C.  That, prior to his representation of defendant, counsel had successfully defended other defendants charged with murder or manslaughter.

"D.  That the decision to object to a particular question or the introduction of a particular item of evidence is often a matter of discretion to an experienced trial lawyer.

"E.  That the Court of Criminal Appeals reviewed the admissability of the statements in question in the context of defendant's Second Proposition on appeal and found the questioning of defendant permissible and the statements admissible, and, further, even if inadmissible the error would be harmless in view of the overwhelming evidence against the accused.

"The Court therefore makes the following Conclusions of Law:

"A.  That the defendant has failed to establish that counsel's failure to object to statements made by defendant at the time of his arrest constitutes ineffective assistance of counsel.

"B.  That the impact of the statements themselves has been reviewed by the Court

of Criminal Appeals and the findings of that Court are res judicata of the issue here.

"On these Findings and Conclusions, Post Conviction Relief as to this issue shall be denied.

"3. Issue C in the Original Application; that counsel for the defendant was ineffective in the second stage of the proceedings by failing to object to certain statements made by the prosecutor. The Court makes the following findings of fact:

"A. That Findings A, B, and C in paragraph 2 above are found herein, in full.

"B. That the decision to object to a particular statement by a prosecutor during closing argument is often a matter of discretion to an experienced trial lawyer.

"C. That the Court of Criminal Appeals has reviewed the entire record of the closing argument for fundamental error and the conclusions of that Court are res judicata of the issue here.

"The Court therefore makes the following Conclusions of Law:

"A. That the defendant has failed to establish that counsel's failure to object to certain statements made by the prosecutor during closing argument constituted ineffective assistance of counsel.

"B. That the impact of the comments themselves has been reviewed by the Court of Criminal Appeals and the findings of that Court are res judicata here.

"On these Findings and Conclusions, Post-Conviction Relief on this issue shall be denied.

"4. Issue D in the Original Application; that there was inadequate notice of certain aggravating circumstances to be used in the second stage of the proceedings. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"5. Issue E in the Original Application; that jury selection was improper and did not meet the requirements of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"6. Issue F in the Original Application; that the prosecution knowingly used the perjured testimony of one Eli Maghee to secure the conviction. The Court finds that the question of perjury was raised in the defendant's original Appeal and was dealt with by the Court of Criminal Appeals, which found that any discrepancies in the testimony of Eli Maghee was not of such a nature as to constitute perjury, that finding being res judicata of the issue here. The non-existance of such perjury being established, the defendant's allegation that the prosecutor knew of such perjury is wholly without merit. Post-Conviction Relief as to this issue shall therefore be denied.

"7. Issue G in the Original Application; that the State's retention of defendant's pick-up truck and camper deprived the defendant of funds with which to hire an investigator. The Court makes the following Findings of Fact:

"A. That, during the trial, the defendant's pick-up was identified by two witnesses as being at the scene of the murder at the time of the murder.

"B. That, at the time of his arrest, the defendant's pick-up contained, in the cab area, the wallets of the murder victim and his wife, and, in the camper portion, packages of meat which had allegedly been taken from the scene of the murder.

"C. That the location of these items, and the ability of law enforcement officers to view them in plain sight, was at issue in certain motions before trial and during the trial itself.

"D. That the defendant was aware, at all times subsequent to his arrest, that his pick-up and camper were being held as evidence.

"The Court therefore makes the following Conclusions of Law:

"A. The pick-up and camper, while never introduced at trial, might have been required for a witness to view or for a jury view, and thus had evidentiary value and its retention for those purposes was proper.

"B. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"8. Issue 2 in the Amended Application; that the State withheld exculpatory evidence. The Court makes the following Findings of Fact:

"A. That in a Motions Hearing conducted on September 5, 1979, upon proper request by the defense, the State announced that it possessed no exculpatory evidence.

"B. That in the same Motions Hearing, the State requested that if the defense knew of anything which it felt might be exculpatory that it make a specific request.

"C. That no specific request for an exculpatory item of evidence was made and that none was denied.

"D. That the State made full disclosure of all scientific, ballistics and medical reports in its possession.

"E. That the State's attorney in the instant hearing announced that his search of the files of the District Attorney's revealed no exculpatory evidence.

"F. That the one item of evidence specifically cited by the defendant in the instant hearing, the prior statement of one Kathy Coleman, was reviewed by the Court and found to be not exculpatory.

"G. That defense counsel's offer of what his client might testify to concerning exculpatory evidence would have been complete hearsay and of no guidance to the Court.

"H. That no other witnesses were offered as to the existance of exculpatory evidence; further, that examination of defendant's trial counsel revealed no knowledge on his part of any potentially exculpatory evidence which was withheld by the State.

"I. That no exculpatory evidence withheld by the State was shown to exist.

"Therefore, the Court makes the following Conclusions of Law:

"A. That no grounds for Post-Conviction Relief based upon the State's withholding of exculpatory was shown to exist.

"Post-Conviction Relief as to this issue shall be denied.

"9. Issue 3 in the Amended Application; that the State withheld evidence of another person's involvement in the crime. The Court adopts all of its findings in paragraph 8 above as to exculpatory evidence and makes those same findings as to evidence of another person's involvement in the crime. The Court makes the same conclusion of law on the instant issue as was made in paragraph 8 above.

"Post-Conviction Relief as to this issue shall be denied.

"10. Issue 4 in the Amended Application; that the Court erred in allowing certain evidence of weapons and as to cross-examination thereon. The Court makes the following Findings of Fact:

"A. That argument of counsel in the instant hearing centered on evidence that the defendant's brother, Dale Coleman, took the alleged murder weapon, a .28 gauge shotgun, from the defendant's bedroom and threw it, along with other weapons, into a local river, subsequently pointing out to law enforcement where the weapons were and allowing for their recovery.

"B. That the Court, by its rulings at trial, limited the State, in its evidence, to the fact that the shotgun was recovered from defendant's brother and would not permit testimony about the river unless necessary to establish chain of custody.

"C. That it was not shown by the defense where this limitation was violated or where there was any mention of the guns being recovered from the river.

"D. That the defense was aware of the rulings of the court in this regard during the trial and at all times subsequent thereto.

"Therefore the Court makes the following Conclusions of Law:

"A. That the shotgun, itself, was probative, admissable evidence.

"B. That it was necessary for the State to show chain of custody in order to link the shotgun to the defendant.

"C. That no undue prejudice attached to the manner in which the shotgun was introduced.

"D. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"11. Issue 5 in the Amended Application; that the State committed error in commenting on defendant's silence during the State's closing argument. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"12. Issue 6 in the Amended Application; that the State committed error in its comments on evidence not in the record or in misstatements as to the evidence. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"13. Issue 7 in the Amended Application; that the Court committed error in failing to instruct on the defendant's failure to testify and his right to silence. The Court makes the following Findings of Fact:

"A. That no such instruction was given in either stage one or stage two of the proceedings.

"B. That the defense was asked in each stage whether it had any desired instruction and no instruction on the defendant's failure to testify or right to silence was requested in either stage.

"C. That defendant's trial counsel testified in the instant hearing that he was aware at the time of the trial that such an instruction existed and would be given on request and that it was a matter of trial strategy, on a case by case basis, whether such an instruction worked to a defendant's benefit or harm.

"D. That the defense was aware at the time of trial and at all times subsequent thereto that such an instruction was not given.

"Therefore, the Court makes the following Conclusions of Law:

"A. That, absent a request therefore, it is not error to fail to give an instruction on the defendant's failure to testify and right to silence.

"B. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"14. Issue 8 in the Amended Application; that the State failed to provide evidence of certain witnesses' bias or motives in testifying. The Court makes the same Findings of Fact as to allegedly withheld evidence of witnesses' bias or motives as it made in regard to exculpatory evidence in paragraph 8 above. The Court further concludes, as a matter of law, that no grounds for Post-Conviction Relief based upon the

State's withholding of evidence of witnesses' bias or motives was shown to exist.

"Post-Conviction Relief as to this issue shall be denied.

"15. Issue 9 in the Amended Application; that the Court erred in not providing an investigator to the defense or appointing co-counsel or legal intern. The Court makes the following Findings of Fact:

"A. That the defense requested on numerous occasions that the court lacked the authority to do so.

"B. That on each occasion, the defense was advised that the court lacked the authority to do so.

"C. That disclosure by the State of discoverable items, including scientific, ballistics and medical reports was complete.

"D. That six of the witnesses, who provided critical evidence as to the defendant's ownership of a .28 gauge shotgun as well as his location immediately before and after the murder, were related to the defendant by blood or marriage and were equally accessible to the State and the defense.

"E. That defendant's trial counsel was experienced and skilled in the law and presented Motions and other procedural matters important to his client's defense in a timely and professional manner.

"F. That the defense was aware at the time of trial and at all times subsequent thereto that the court had not provided an investigator or appointed legal assistance.

"Therefore the Court makes the following Conclusions of Law:

"A. That the defendant was provided an able and thorough defense and was not prejudiced by failure to appoint an investigator or additional legal assistance.

"B. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"16. Issue 10 in the Amended Application; that the Court erred in failing to allow voir dire of a juror as to conversations with other jurors. The Court makes the following Findings of Fact:

"A. The juror in question, Juror Myers, stated on voir dire that she had heard about the case from a close friend who was also a close friend of the victims.

"B. The juror was excused for cause and never sat on the case.

"C. The juror gave no indication that she had heard anything from another potential juror or had discussed what she knew with any other potential juror.

"D. All jurors prior to Myers and all jurors after Myers were asked under oath what, if anything, they had heard about the case.

"E. Defense counsel was given the opportunity to discuss privately with juror Myers whether there had been any conversation among potential jurors as to Myers knowledge of the case.

"F. The voir dire was conducted with each juror being questioned privately, outside the presence of the other jurors or potential jurors.

"G. That the defense was aware at the time of trial and at all times subsequent thereto that the court had not allowed voir dire of juror Myers as to her conversations, if any, with other jurors after she had been excused for cause.

"Therefore the Court makes the following Conclusions of Law:

"A. No prejudice to the defendant occurred from the manner in which juror Myers was questioned or from the failure to allow the defendant further voir dire after the juror had been excused for cause.

"B. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"17. Issue 11 in the Amended Application; that error was committed by defense counsel's alienation from the defendant during closing argument. The Court makes the following Findings of Fact:

"A. That the defendant, in this issue, referenced a portion of his counsel's closing argument in the second stage of the proceedings.

"B. That the defendant's trial counsel, in examination during the instant hearing, stated that his remarks were an attempt to obtain mercy for his client and not an attempt at alienation.

"C. That the Court finds nothing in the suspect remarks that would support a claim that they were intended to, or resulted in, alienation of counsel from client before the jury.

"D. That the defense was aware at the time of trial and at all times subsequent thereto that the remarks had been made.

"E. That the attorney who prosecuted the appeal in behalf of the defendant was a different attorney than his trial counsel.

"Therefore the Court makes the following Conclusions of Law:

"A. No prejudice to the defendant occurred from the remarks referenced by the defendant in this issue.

"B. That this question was within the knowledge of defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"18. Issue 12 in the Amended Application; that the Court erred in failing to suppress evidence obtained at the time of the defendant's arrest. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Crimi-nal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"19. Issue 13 in the Amended Application; that the rights of the defendant were violated through the use of perjured testimony from Eli Maghee. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"20. Issue 14 in the Amended Application; that the Court erred in allowing the testimony of defendant's reputed common-law wife. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"21. Issue 15 in the Amended Application; that the Court erred in allowing evidence which resulted from an illegal search of the defendant's vehicle. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"22. Issue 16 in the Amended Application; that error was committed in presenting evidence of other crimes in the second stage of the proceedings for which no notice was provided. The Court finds that the question of adequate notice of other crimes evidence, in both the first and second stages of the proceedings, was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"23. Issue 17 in the Amended Application; that the defendant was denied a fair trial due to misstatements of the evidence by the prosecutor. The Court finds that this question was raised in the defendant's

original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res judicata of the issue, Post-Conviction Relief shall be denied.

"24. Issue 18 in the Amended Application; that error was committed in overruling defense objections to certain items of evidence and technical reports pertaining thereto. The Court makes the following Findings of Fact:

"A. That, upon his arrest, the defendant's pants were submitted to the O.S.B.I. laboratory in Tahlequah, Oklahoma.

"B. That a certain spot was found on the pants, cut out and analyzed and was found to be blood, human, type unknown.

"C. That the nature of the test destroyed the spot, making it unavailable for defense analysis.

"D. That the chemist was permitted to testify as to his findings.

"E. That the defense called a witness who testified that the defendant, shortly before the crime alleged, had cut himself; the same being offered as evidence of an alternative source for the spot of blood.

"F. That the defense as aware at the time of trial and at all times subsequent thereto that the testimony as to the spot of blood was ruled admissible and admitted into evidence.

"Therefore the Court makes the following Conclusions of Law:

"A. That the evidence was probative of a material fact at issue and was admissible for whatever weight the jury chose to give it.

"B. That the destruction of the evidence, through the very nature of the testing, does not render the evidence inadmissible.

"C. That this specific question was within the knowledge of the defendant at the time of his appeal but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief shall be denied as to this issue.

"25. Issue 19 in the Amended Application; that error was committed in allowing evidence, in the second stage of the proceedings, of other crimes for which no convictions had been had. The Court makes the following Findings of Fact:

"A. That evidence was presented in the second stage of criminal acts for which no convictions had been had.

"B. That the evidence was offered to show a probability that the defendant would commit acts of violence in the future.

"C. That the defense was aware at the time of the trial and at all times subsequent thereto that evidence of these crimes was presented.

"Therefore the Court makes the following Conclusions of Law:

"A. That evidence of actions by the defendant which are probative of the issue of whether a probability exists that the defendant, absent infliction of the death penalty, will commit acts of violence in the future, are admissible in the second stage of the proceedings even if those acts are criminal in nature and no convictions for those actions have been obtained.

"B. That this question was within the knowledge of defendant at the time of his original Appeal from his conviction, but was not raised, and, thus, does not constitute new evidence or new rounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"26. Issue 20 in the Amended Application; that the defendant was denied effective representation of counsel due to counsel's failure to object on certain occasions and to otherwise preserve his client's rights. On this issue, the Court re-adopts its Findings of Fact and Conclusions of Law in paragraphs 2 and 3 above, as fully

as if repeated here, and further concludes as matters of Law:

"A. That the defendant has failed to meet his burden of showing lack of reasonably competent counsel or ineffective assisance of counsel, much less the standard of farce or mockery which was in effect at the time of the trial of this cause.

"B. That neither hindsight nor lack of success is the proper criteria for judging effectiveness of counsel.

"C. That the defendant was provided a highly competent and effective trial counsel and defense, and was not prejudiced by certain failures to object to items of evidence, questions propounded, or remarks of opposing counsel, which failures are as easily attributable to strategy as to error.

"On these Findings and Conclusion, Post-Conviction Relief as to this issue shall be denied.

"27. Issue 21 in the Amended Application; that the defendant was prejudiced by the failure of the State to produce the entire transcript of defendant's statement. The Court makes the following Findings of Fact:

"A. That, upon his arrest, the defendant, after advice of rights, gave a statement to the District Attorney's office.

"B. That a transcript of the defendant's statement was prepared.

"C. That the State, at a Motions Hearing on September 5, 1979, acknowledged possession of the transcript and offered a copy of said transcript to the defense.

"D. That the defendant, by affidavit submitted in the instant proceeding, acknowledged possession of said transcript.

"E. That the defendant and his attorney, at the trial of the case, submitted that they were aware the State had evidence of prior statements by the defendant, and that those statements mitigated against the defendant taking the stand.

"F. That the defendant's trial attorney, under examination in these proceedings, testified that he was aware of the contents of the statement and felt that there were inconsistencies between that statement and other statements by his client that would be damaging if the defendant took the stand.

"G. That the State never offered the contents of the statement at the trial.

"H. That the defense was aware at the time of the trial and at all times subsequent thereto of the extent of the statement in the possession of the State and the extent of the statement given by the defendant if the transcript was, in fact, incomplete.

"Therefore the Court makes the following Conclusions of Law:

"A. That the State complied with the discovery laws that it make known to the defense the existence of any statement made by the defendant and the contents thereof.

"B. That the State did not use any statement made by the defendant against the defendant which it had not previously made known to the defendant.

"C. That if, in fact, the transcript was not complete, that the defendant was not prejudiced thereby since the transcript was not used by the State and the defendant is charged with the knowledge of what he has said.

"D. That this question was within the knowledge of defendant at the time of his original Appeal from his conviction but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"28. Issue 22 in the Amended Application; that the defendant was denied a fair trial due to the exclusion of jurors who expressed general reservations about the death penalty. The Court finds that this question was raised in the defendant's original Appeal from his conviction and was dealt with by the Court of Criminal Appeals. The findings of that Court being res

judicata of the issue, Post-Conviction shall be denied.

"29. Issue 23 in the Amended Application; that the defendant was denied a fair trial by prejudicial actions which focused apparent guilt on the defendant. The Court makes the following Findings of Fact.

"A. The defendant was charged with, and convicted of, murder in the first degree.

"B. That following preliminary hearing and before trial, the defendant departed from the Muskogee County jail, without permission, and subsequently became the suspect in another murder in Tulsa, Oklahoma, an assault with a deadly weapon in Oklahoma County, and the kidnapping of a law enforcement officer in Arizona.

"C. That the defendant was considered an escape and security risk by the State.

"D. That the officers who were assigned to guard the defendant during trial were instructed to wear coats or jackets to cover any firearms they might be possessing.

"E. That the court observed no occasion during trial when the instructions referred to immediately above were not complied with.

"F. That the defendant was dressed in civilian clothes, as opposed to jail or prison garments, at all times during trial.

"G. That the defendant was never handcuffed or shackled in the courtroom during trial.

"H. That the defendant's trial counsel, examined in the context of this hearing, testified that he knew of no occasion, and no occasion was ever brought to his attention, when the defendant was handcuffed or physically restrained by deputies outside the courtroom but in the presence of jurors.

"I. That defendant's trial counsel further testified that if any such occasion had been brought to his attention he would have made a record of it.

"J. That there is no record of handcuffs or physical restraint in the trial transcript.

"K. That defendant's counsel now offers proof that the defendant would testify that there were occasions, coming to and from the courtroom, when he was physically held by deputies or in handcuffs and that jurors were present in the hall on some of those occasions. The State stipulated that, if the defendant were in court, he would so testify, but did not stipulate to the truth thereof.

"L. That, by this offer, the defendant shows that he had knowledge at the time of the trial and at all times subsequent thereto of the actions he now complains.

"Therefore the Court makes the following Conclusions of Law:

"A. That the degree of security provided during the trial of the above styled cause was reasonable under the circumstances.

"B. That the defendant was not prejudiced by the security measures taken or by any action of which the court or his attorney had knowledge.

"C. That this question was within the knowledge of the defendant at the time of his original Appeal from his conviction but was not raised, and, thus, does not constitute new evidence or new grounds and is not properly raised in an Application for Post-Conviction Relief.

"On these Findings and Conclusions, Post-Conviction Relief as to this issue shall be denied.

"There were a number of issues raised in the Application and Amended Application for Post-Conviction Relief wherein this Court relied upon the rulings of the Court of Criminal Appeals on direct Appeal as dispositive of the issue under res judicata. This Court wishes to stress that on none of those issues was the defendant deprived of his right, through counsel, to make his argument, present evidence, and argue authority. On none of those issues did this Court find evidence or authority to disturb the prior rulings.

"This Court also wishes to stress that the Appeal of the conviction was handled by an attorney other than the trial attorney and that issues which challenged the effec-

tiveness of the trial attorney could have been raised by that attorney on appeal. Here, again, while this Court cited those issues which were not properly presented in an Application for Post-Conviction Relief, there was no bar of defense counsel in developing those issues and each was found to be without merit.

"It should be further noted by this Court that the issue of whether the defendant should be present during his hearing was under continuous advisement and if the Court found, at any time, that his presence was necessary the proceedings would have been delayed until his presence could be secured. In each instance where counsel sought the defendant's testimony, that testimony was found to be either stipulated to by the State, not relevant to the issue or not admissable or competent testimony. On no occasion did the Court find that the presence of the defendant to be either necessary or of benefit to the Court in determining the legal issues presented.

"Based upon the findings of the Court relative to each of the issues presented, it is the Order of this Court that the Application for Post-Conviction Relief and the Amended Application for Post-Conviction Relief, and each ground contained therein, be, and are hereby, DENIED."